COMMONWEALTH vs. BENJAMIN LESTER, THIRD.

No. 05-P-1755.

Hampden. October 11, 2006. - September 4, 2007.

Present: DUFFLY, BERRY, & MILLS, JJ.

*Intimidation of Witness. Evidence,* Hearsay, Admissions and confessions. *Practice, Criminal,* Assistance of counsel, Double jeopardy.

A criminal defendant's out-of-court statement to one police officer, elicited upon cross-examination of a second police officer by a codefendant's counsel at trial, was subject to exclusion from evidence on hearsay grounds, because, even though the defendant's statement — which the record did not reflect as having been reduced to writing — qualified as an admission of a party opponent, the second police officer's testimony concerning what the defendant told the out-of-court declarant police officer did not fall within any exception to the hearsay rule. [60-64]

Defense counsel's failure to move to bar the introduction of a powerfully incriminating hearsay statement at a criminal trial constituted ineffective assistance of counsel compelling the reversal of the defendant's convictions, given that the admission of the statement affected the denial of the defendant's motions for required findings of not guilty and appeared to have had an impact on the jury's guilty verdicts. [64-66]

This court determined that of the seventeen indictments charging the criminal defendant with intimidation of a witness, G. L. c. 268, § 13B, five were supported by sufficient evidence (both direct and circumstantial) to survive the standard against entry of a required finding of not guilty, and attendantly to permit retrial consonant with double jeopardy principles, in the aftermath of the defendant's trial counsel's ineffective assistance that deprived the defendant of an otherwise available, substantial ground of defense. [66-70]

INDICTMENTS found and returned in the Superior Court Department on March 25, 2004.

The cases were tried before *Judd J. Carhart,* J.

*Nadell Hill* for the defendant.

*Katherine E. McMahon,* Assistant District Attorney, for the Commonwealth.

BERRY, J. This appeal involves a trial on thirty-four indict-

ments charging intimidation of a witness. G. L. c. 268, § 13B.[1] In the grand jury's return, the indictments were split, with seventeen returned against the defendant, Benjamin Lester, III, and seventeen returned against his codefendant brother, Aaron Lester.[2] The indictments charged that, on March 15, 2004, the defendant, in a series of telephone calls, threatened and offered inducements to influence a witness in an unrelated criminal prosecution for a shooting and that, on March 14, 2004, Aaron also lodged threats and offered inducements for the same purpose by means of placing telephone calls to the same witness.

The brothers were tried together before a jury. The defendant was convicted on seventeen indictments. Aaron was acquitted on the five indictments submitted to the jury.[3]

1. *The principal appellate issues.* The appellate challenge advanced by the defendant concerning whether the Commonwealth introduced enough evidence to prove the defendant guilty of seventeen separate G. L. c. 268, § 13B, offenses is a substantial one.[4] The record reflects deficiencies in the Commonwealth's proof in that the state of the trial evidence left undeveloped adequate particularization of seventeen threats or inducements as

---

[1]General Laws c. 268, § 13B, as amended through St. 1996, c. 393, §§ 2-3, provides, in pertinent part:

> "Whoever, directly or indirectly, willfully endeavors by means of a gift, offer or promise of anything of value or by misrepresentation, intimidation, force or express or implied threats of force to influence, impede, obstruct, delay or otherwise interfere with any witness or juror in any stage of a trial, grand jury or other criminal proceeding or with any person furnishing information to a criminal investigator relating to a violation of a criminal statute of the commonwealth . . . shall be punished . . . ."

See *Commonwealth* v. *Edwards*, 444 Mass. 526, 537 n.20 (2005).

[2]Given that the brothers share the same surname, the defendant Benjamin Lester, III, will be referred to as "the defendant," and his brother will be referred to as "Aaron."

[3]Twelve other counts against Aaron were dismissed by the trial judge at the close of the Commonwealth's case-in-chief.

[4]At the close of the Commonwealth's case (which was also the close of all the evidence), the defendant moved for required findings of not guilty on the seventeen indictments, and thereby preserved his right to contest the sufficiency of the evidence.

having originated from the defendant. Rather, the Commonwealth's evidence only vaguely and randomly differentiated between who of the two brothers (if either) placed which of the jointly split thirty-four calls that were the predicates for the respective indictments against each.

Indeed, from all that we can discern, it appears that the number seventeen for indictments was based on a random and undifferentiated equal division between the two codefendant brothers of the incoming calls registered on the witness's cellular telephone (cell phone) on March 14.[5] As the trial judge observed during the proceedings, the Commonwealth advanced neither an evidentiary predicate, nor a logical explication for the numeric split in the assignment of seventeen indictments to each defendant.[6] We address this problem in the proof of the seventeen indictments against the defendant in part 5, *infra*, which deals with the sufficiency of the evidence and double jeopardy.

Added to the problems in the sufficiency of the evidence concerning assignment of the number of telephone calls is an inextricably interrelated second appellate issue — also of substantial weight in the defendant's challenge to his convictions — concerning whether the defendant's inculpatory statement to a police officer that he made "some" telephone calls to the victim was improperly introduced at trial. The defendant's statement was initially elicited by Aaron's defense counsel in cross-examination of Sergeant Kevin Devine, the Commonwealth's only police witness. However, Sergeant Devine, who testified at trial and described the defendant's statement, was not the officer to whom the defendant had spoken. No written statement of the defendant was introduced as an exhibit, nor was it established that the defendant ever signed a statement. From all that appears of record, the defendant's statement may have been summarized in a nontestifying officer's report. This presents

---

[5]As noted above, the defendant was convicted of placing the intimidating calls on March 15, when twenty-nine calls were made to the victim's cell phone. All of the indictments against Aaron were for calls made on March 14, when thirty-four calls were made to the victim's cell phone. See note 16, *infra*.

[6]As the judge pointedly inquired at one stage of the trial, "Who made the calls, one or the other. . . . There is no evidence of who made the call."

a "totem pole" hearsay problem. See *Commonwealth* v. *Caillot*, 449 Mass. 712, 721-722 (2007).

For the reasons stated herein, we reverse the seventeen judgments of conviction and remand. In accord with double jeopardy principles, a new trial may be had on only five of the indictments, for which there was sufficient evidence adduced in this first trial. See generally part 5, *infra*.

2. *The trial evidence.* We summarize the trial evidence, reserving additional detail as pertinent to analysis of specific issues. The only witnesses to testify at the trial were Jose Reyes and Sergeant Kevin Devine.

a. *The telephone calls.* Jose Reyes was to be the primary trial witness in a shooting case. Reyes, who had been shot in the back, had identified one Maurice Felder as the man who shot him. Felder was indicted for the shooting, and Reyes was to be the lead prosecution witness. In the shooting case being prosecuted against Felder, the Commonwealth produced discovery materials to the defense, including reports of witness interviews. See Mass.R.Crim.P. 14, 378 Mass. 874 (1979). Identifying personal information was supposed to have been redacted from the discovery documents so produced. However, by inadvertence, the number to Reyes's cell phone was not redacted.

After the discovery disclosure, Reyes began to receive threatening calls on his cell phone. One caller identified himself as "A." Another caller identified himself as "B-E-N." Reyes recognized the caller "A" to be Aaron, and testified that Aaron threatened him in "[l]ike four or five" calls, warning Reyes that his life would be taken and that Reyes "better not show up to court or else."

Reyes recognized the voice of "B-E-N" to be that of the defendant.[7] The defendant threatened Reyes's life and warned that if Reyes testified, there would be resulting harm to Reyes's mother and the mother of his child. Trying another tack, the defendant offered to give Reyes $2,000, and also offered cocaine, if Reyes did not go to court and testify.

Reyes informed the police of the threatening calls. Sergeant

---

[7]The authentication for Reyes's voice identification of the defendant was based on the facts that Reyes had known the defendant (and Aaron) for some three to six years, and that they all "chilled in the same neighborhood."

Devine interviewed Reyes and obtained copies of the telephone records for Reyes's cell phone. These telephone records listed thirty-four calls placed to Reyes's cell phone on March 14, 2004, with the calls originating from telephone number 747-2161, and, on March 15, 2004, twenty-nine calls placed from the same telephone number to Reyes's cell phone.[8] Telephone number 747-2161, according to other telephone records, was assigned to apartment 301 at 15 Park Street in Springfield. Sergeant Devine learned that Tarina Moore, the defendant's girl friend, rented that apartment, and that the defendant lived there with Moore. The defendant and Aaron were arrested in the apartment.

b. *The defendant's statement.* During the course of cross-examination of Sergeant Devine, Aaron's lawyer opened a field of inquiry concerning a statement that the defendant had given to the police, which statement exculpated Aaron. Sergeant Devine was not present during the police interview that yielded the defendant's statement. In this cross-examination, Aaron's attorney did not, however, limit his questioning to the part of the defendant's statement exculpating Aaron, but also waded into that part of the statement that inculpated the defendant. The sequence was as follows. Sergeant Devine stated that he had "review[ed]" the statement made by the defendant to a police officer. Aaron's attorney then asked, "And at some point in reviewing those statements [*sic*], did you come to learn that he [the defendant] acknowledged he made the phone calls?" Sergeant Devine answered, "Yes, I did." The sergeant further testified that the defendant had said that Aaron did not make any telephone calls.

On redirect examination by the prosecutor, Sergeant Devine reiterated the defendant's admission that he had made telephone calls to Reyes. However, in the redirect, the sergeant, in a modification, stated that the defendant had admitted making "*[s]ome* phone calls," but not all thirty-four calls. This differs from his prior testimony quoted above wherein the sergeant described the defendant as admitting making "*the* phone calls." The defendant's trial counsel did not object to the questioning concerning the defendant's statement either in the cross-examination or in the

---

[8]The records show the telephone number from which each call was made, the time of each call, and the duration of the call.

redirect examination. This is the essence of the ineffective assistance of counsel claim on appeal.[9]

Both defendants rested without presenting evidence and filed motions for required findings of not guilty. As previously noted, the trial judge allowed Aaron's required finding motion in part, dismissing twelve of the seventeen indictments against Aaron. See note 3, *supra.* The judge did so on the basis that Reyes had identified Aaron as having made only four or five calls. The judge denied the defendant's motions in toto.

3. *The totem pole hearsay problem.* The defendant contends that Sergeant Devine's testimony relating what the defendant had stated to another police officer was improperly admitted because it constituted totem pole hearsay. It is further submitted that the introduction of the defendant's statement was highly damaging, and that the defendant's trial counsel was ineffective in not objecting to, and seeking to bar, the statement's introduction. The end result of this ineffective legal assistance, appellate counsel argues, gave rise to a substantial risk of a miscarriage of justice.

We agree with the defendant that there is a totem pole hearsay issue presented because not every tier of the totem pole fell within the line of exceptions to the hearsay rule. Therefore, the defendant's statement was subject to exclusion on hearsay grounds, and the defendant's trial counsel rendered ineffective legal representation in failing to move for exclusion of this very incriminating statement, in which the defendant acknowledged that he made calls to the witness.

This case involves two tiers on the hearsay totem pole: (1) the defendant's out-of-court statement, in which, of course, the defendant was the declarant; and (2) the out-of-court statement of the nontestifying police officer who interviewed the defendant, and who was the nontestifying declarant. In a circumstance presenting such totem pole hearsay, to be admissible, each statement must fall within a hearsay exception. "[E]vidence based on a chain of statements is admissible only if each out-of-court as-

---

[9]We may resolve a claim of ineffective assistance of counsel on direct appeal where, as here, "the factual basis of the claim appears indisputably on the trial record." *Commonwealth* v. *Henley,* 63 Mass. App. Ct. 1, 8 (2005), quoting from *Commonwealth* v. *Adamides,* 37 Mass. App. Ct. 339, 344 (1994).

sertion falls within an exception to the hearsay rule." *Commonwealth* v. *McDonough*, 400 Mass. 639, 643 n.8 (1987). See *Commonwealth* v. *Santiago*, 437 Mass. 620, 627 n.4 (2002).

a. *The first hearsay tier — party-opponent admission.* We turn to the first tier of the totem pole. The Commonwealth asserts that the defendant's statement was an admission by a party opponent and, therefore, was properly admissible in evidence across the board, so that any objection by defense counsel would not have been sustained. The defendant contests that the party-opponent hearsay exception applies because the statement was elicited in cross-examination by the codefendant's counsel. Neither position prevails. Contrary to the defendant's construct, as a matter of the rules of evidence, the defendant's statement, at the first tier, was introducible as the admission of a party opponent. However, likewise contrary to the Commonwealth's construct, admissibility at the first tier under the exception to the hearsay rule for admissions of a party opponent does not extend across the board so far as to reach the second tier of the totem pole hearsay problem presented in this case.

It is an accepted evidentiary rule that "[a]ny extrajudicial statement by a party may be admitted in evidence against [him] by an opponent, and will not be excluded on the ground that it constitutes hearsay." *Commonwealth* v. *Cutts*, 444 Mass. 821, 834 (2005), quoting from Liacos, Massachusetts Evidence § 8.8.1, at 496 (7th ed. 1999). *Commonwealth* v. *Alisha A.*, 56 Mass. App. Ct. 311, 314 n.3 (2002). See *Commonwealth* v. *Santiago*, 437 Mass. at 627 n.4. "An admission in a criminal case is a statement by the accused . . . of facts pertinent to the issue, which although insufficient in itself to warrant a conviction tends in connection with proof of other facts to establish his guilt." *Commonwealth* v. *Lewin (No. 2)*, 407 Mass. 629, 631 (1990), quoting from *Commonwealth* v. *Bonomi*, 335 Mass. 327, 347 (1957). The defendant's admission that he made "some" of the telephone calls to the witness is an admission by the accused of facts pertinent to the offense elements of intimidation of a witness under G. L. c. 268, § 13B.

Given the foregoing, it is clear that, had the defendant's statement been elicited by the Commonwealth with proper authentication and foundation, the statement would have been introducible

as the statement of a party opponent.[10] Contrary to the defendant's argument, the evidentiary analysis of whether a statement is an admission, and, therefore, an exception to the hearsay rule, does not turn on the introducing party being the adversary at trial. Rather, whether a statement is an admission depends on whether there is an adversity of interests between the introducing party and the party who made the statement. "[T]wo parties who are not opponents in a pleadings sense could have adverse positions on some issue. In some circumstances evidence offered by one such party of an admission made by the other party could properly be admitted in application of the principles underlying the party opponent rule." *Flood* v. *Southland Corp.*, 416 Mass. 62, 71 (1993). "[T]he admissibility of extrajudicial statements extends beyond party opponents in the pleadings sense to parties who take positions adverse to one another." *Care & Protection of Sophie*, 449 Mass. 100, 106 (2007). See Brodin & Avery, Massachusetts Evidence § 8.6.1, at 502 (8th ed. 2007). In this case, the defendants occupied adverse positions. Aaron's defense was, among other things, that he did not have access to the defendant's girl friend's apartment and, therefore, did not make any calls on the telephone therein. He further argued that the defendant, not Aaron, admitted responsibility for making the calls. See *United States* v. *Horton*, 847 F.2d 313, 324 (6th Cir. 1988) (evidence of defendant's admissions was properly elicited from a codefendant, whose interests were adverse to those of the defendant). See also *United States* v. *Palow*, 777 F.2d 52, 56 (1st Cir. 1985), cert. denied, 475 U.S. 1052 (1986) (an admission must be contrary to a party's position at trial; it may be introduced in evidence by a codefendant).

---

[10]See *Commonwealth* v. *Marshall*, 434 Mass. 358, 365-366 (2001) (third party's testimony that defendant had related to her a threat to the victim some three weeks before murder was an admission by a party opponent), overruled on other grounds by *Commonwealth* v. *Santiago*, 437 Mass. at 625-626 & n.3; *Commonwealth* v. *Cutts*, 444 Mass. at 834 (Commonwealth's introduction of statements defendant made to third party after the murder were admissions by a party opponent). See also *McHoul, petitioner*, 445 Mass. 143, 148 n.3 (2005), cert. denied sub nom. *McHoul* v. *Massachusetts*, 547 U.S. 1114 (2006) ("[m]any of the statements to which the [defendant] objected were his own, and, as such, admissible under the general rules of evidence as admissions of a party opponent . . ."); *Commonwealth* v. *Beauchamp*, 49 Mass. App. Ct. 591, 598-599 (2000) (Commonwealth properly introduced defendant's testimony from a prior proceeding, as it constituted an admission by a party opponent).

For these reasons, as a matter of the rules of evidence, the defendant's statement — albeit elicited in cross-examination by a codefendant, rather than by the Commonwealth — fell within the hearsay exception for a party opponent admission. The first tier of the double hearsay problem is, hence, resolved. We turn now to the second-tier problem.

b. *The second hearsay tier.* As previously noted, Sergeant Devine was not present during the interview of the defendant. Hence, there was a second-level, double hearsay problem in the introduction of the defendant's statement by means of Sergeant Devine testifying based on an out-of-court description by the police officer who had obtained the defendant's statement. For context to this evidentiary analysis, we note again that, although a written statement authenticated as being signed by the defendant would have been admissible in evidence, no such statement was proffered. Similarly, had the officer who heard the defendant's admission been called to testify about the substance of what the defendant had said, that officer's direct testimony would also be admissible. See cases collected in note 10, *supra*, regarding admissions and confessions. Neither acceptable evidentiary path was followed here, however. Instead, Sergeant Devine, without objection by defense counsel, was permitted to testify concerning what the defendant told an out-of-court declarant police officer. There, then, is an unresolved second-tier totem pole hearsay problem, and defense counsel's failure to raise objection to this hearsay poses the issue of ineffective assistance of counsel.

As a counter to this ineffective assistance of counsel issue, the Commonwealth argues that an objection, if raised by defense counsel, would not have been sustainable, because Devine testified that he had "review[ed]" the defendant's statement given to the police. The argument is incorrect. The second-tier hearsay pass-through problem exists regardless whether the nontestifying officer related the defendant's statement to Sergeant Devine or the nontestifying officer wrote a summary of the defendant's statement in a report, which Devine read and then testified to at trial. The second-tier hearsay pass-through problem also still exists even if there were a written statement by the defendant that

Devine had reviewed, because no such statement was introduced in evidence at trial.[11]

4. *The aftermath of counsel's ineffectiveness.* Given no introduction of an authenticated, signed statement by the defendant and no hearsay exception covering the second tier of hearsay in Devine's testimony as to what the defendant told another officer, an objection lodged by trial counsel would likely have been sustained.[12] In light of the very incriminating nature of this statement, in which the defendant confessed to making some calls, and the error by his trial counsel, we are called upon "to decide if we have a serious doubt whether the result of the trial might have been different had the error not been made." *Commonwealth* v. *LeFave*, 430 Mass. 169, 174 (1999). That determination, in turn, requires "review [of] the evidence and the case as a whole, considering the strength of the Commonwealth's case, as well as the nature and significance of the alleged errors." *Commonwealth* v. *Chase*, 433 Mass. 293, 299 (2001), citing *Commonwealth* v. *Alphas*, 430 Mass. 8, 13 (1999).

The aftereffects of the ineffective assistance of counsel in failing to move to bar the introduction of the statement are twofold. First, the admission of the defendant's statement af-

---

[11]On the state of this record, there was no evidence that there was a written statement by the defendant versus a written police report summarizing an interview of the defendant. The Commonwealth argues that, from Sergeant Devine's testimony that he "review[ed]" the defendant's statement, an inference is to be drawn that the statement was written or signed by the defendant. That is not a supportable inference, in the absence of any clear evidence concerning the nature of what the sergeant reviewed. Moreover, even if such an inference were to be drawn, it would still not solve the hearsay problem that no signed statement of the defendant was introduced in evidence.

[12]Where the claim of ineffective assistance of counsel is that the trial lawyer failed to interpose an objection to block the introduction of evidence, or failed to file a motion to strike, the defendant has the burden of demonstrating that, had the objection been made or the striking motion filed, that trial act by the attorney had a likelihood of being successful. That standard is met here, as an objection based on hearsay would likely have been sustained. See the related and similar standard applied in the pretrial context, in which, in order to establish a claim of ineffective assistance of counsel based on, for example, failure to file a motion to suppress, a defendant "has to demonstrate a likelihood that the motion . . . would have been successful." *Commonwealth* v. *Comita*, 441 Mass. 86, 91 (2004). *Commonwealth* v. *Fletcher*, 52 Mass. App. Ct. 166, 168 (2001).

fected the denial of the defendant's motions for required findings of not guilty. As previously noted, the evidence presented by the Commonwealth that the defendant made seventeen threats or inducements to the witness in seventeen telephone calls was weakly presented; there were vagaries and gaps in the trial testimony of the primary witness; and, from all that appears, the origin of the indictments rested on a random split of thirty-four telephone calls between the codefendant brothers. See part 1, *supra*. Accordingly, on the state of the evidence, the defendant's motions for required findings of not guilty as to a substantial number of the indictments (at least twelve such indictments, as we address in part 5, *infra*, concerning the sufficiency of the evidence) had solid footing. Deficiencies in the Commonwealth's case however, were shored up by the defendant's confession, to which defense counsel had not objected. Indeed, in denying the motions for required findings of not guilty, the trial judge expressly cited the defendant's incriminating admission.[13] It cannot be gainsaid, then, but that the ineffective assistance of counsel gives rise to serious doubt whether the result of the trial might have been different had there not been attorney error.

Second, the admission of the defendant's statement clearly appears to have had an impact on the jury's guilty verdicts. From all that can be discerned, the jury, in their return of guilty verdicts against the defendant, gave heed to Sergeant Devine's testimony relating the defendant's admission to making telephone calls to the witness. This was in contrast to the jury's return of not guilty verdicts for Aaron, as the jury had before them the exculpatory part of the defendant's statement about Aaron not having made any threatening calls.

For these reasons, we conclude that the omission by counsel in failing to challenge the admission of the defendant's state-

---

[13]In response to the argument by trial counsel that the Commonwealth had not sufficiently proved that the defendant made seventeen telephone calls to the witness in violation of G. L. c. 268, § 13B, the judge commented, "You don't think his confession does it?" To this defense counsel responded, "His confession hasn't been entered as evidence." The trial judge corrected this misapprehension, noting that Sergeant Devine had testified to the defendant's statement without objection and, therefore, the confession was admitted for all purposes, including in consideration of the motions for required findings of not guilty.

ment by raising an objection to the totem pole hearsay amounted to "serious incompetency, inefficiency, or inattention of counsel — behavior . . . falling measurably below that which might be expected from an ordinary fallible lawyer," and "deprived the defendant of an otherwise available, substantial ground of defen[s]e." *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). Given the powerfully incriminatory nature of the defendant's confession, and a sustainable basis for objecting to the admission because of the hearsay problem, this is one of those cases in which the attorney's ineffective trial performance "was likely to have unfairly influenced the jury's verdict . . . [so that] if the verdict is left undisturbed, a substantial [risk] of a miscarriage of justice will result." *Commonwealth* v. *Plant*, 417 Mass. 704, 716 (1994). Accordingly, reversal of the seventeen convictions against the defendant is compelled.

5. *The sufficiency of the evidence, retrial, and double jeopardy.* Constitutional principles dictate that, if the evidence introduced by the Commonwealth was insufficient to sustain the defendant's conviction, "retrial is barred by the principles of double jeopardy." *Commonwealth* v. *Cardenuto*, 406 Mass. 450, 457 (1990), citing *Burks* v. *United States*, 437 U.S. 1, 18 (1978). Consequently, following remand of this case post appeal, the Commonwealth may not retry the defendant on a given indictment unless "the evidence admitted at the defendant's trial was sufficient to warrant submission of [that indictment] to the jury." *Kater* v. *Commonwealth*, 421 Mass. 17, 20 (1995). As we previously observed in part 1, there is a grave issue whether the Commonwealth adduced sufficient evidence to prove that the defendant delivered seventeen threats or promised inducements to influence the witness under G. L. c. 268, § 13B, and the trial record leaves unfillable gaps in the seventeen-offense count.

Before we turn to analysis of what number of indictments were supported by sufficient evidence so as to permit retrial consonant with double jeopardy principles, and what number of indictments were not supported by sufficient evidence and as to which retrial is constitutionally barred, we address an important, not readily obvious, procedural point concerning the evidentiary sufficiency. As previously discussed, we have determined that there was error in the admission of the defendant's statement.

However, in weighing the sufficiency of the evidence for double jeopardy purposes, the defendant's incriminating statement, even though erroneously admitted, is counted in the calculus. The Supreme Judicial Court comprehensively analyzed this procedural issue involving the assessment of evidentiary sufficiency and double jeopardy in *Commonwealth* v. *DiBenedetto*, 414 Mass. 37 (1992). The court drew from precedent of the United States Supreme Court and announced the following methodology for determination of this double jeopardy issue. "[A] reversal based on ordinary trial errors such as incorrect receipt of evidence 'implies nothing with respect to the guilt or innocence of the defendant,' but is simply 'a determination that [he] has been convicted through a judicial process which is defective in some fundamental respect. . . . Permitting retrial in this instance is not the sort of governmental oppression at which the [d]ouble [j]eopardy [c]lause is aimed . . . . Our holding today thus merely recreates the situation that would have been obtained if the trial court had excluded [the improperly admitted] evidence.' " *Id.* at 45, quoting from *Lockhart* v. *Nelson*, 488 U.S. 33, 40, 42 (1988). "If the evidence admitted at the trial was sufficient to send the case to the jury, but is insufficient to send the case to the jury if all improperly admitted evidence is disregarded, double jeopardy principles nevertheless do not bar a retrial." *Kater* v. *Commonwealth*, 421 Mass. at 18.

Applying these governing principles, our review of the evidentiary sufficiency with respect to what number of indictments may be the subject of retrial incorporates and weighs the defendant's statement in the calculations. There is, however, an additional twist in the determination of which indictments are, and which are not, barred by double jeopardy because, even counting the defendant's statement in the evidentiary calculus, as shall be seen, there still remains an evidentiary deficiency with respect to twelve of the seventeen indictments so that double jeopardy applies. Thus, only five of the indictments are saved for retrial. We turn to the particulars of the evidence that demonstrate this division between indictments with evidentiary support so as to permit retrial, and indictments which lack such evidentiary support, the retrial of which would violate double jeopardy.

The only numeric assignment in the trial testimony of the witness, Reyes, who received the telephone calls, was that Aaron was the caller in "[l]ike four or five" calls. As to the defendant, Reyes did *not* state a particular number of telephone calls in which threats or inducements were made. Both the prosecution and defense focus on the witness's arithmetic reference to the number of telephone calls in respect to Aaron, but not the defendant. This focus is misdirected. The proper analysis of whether there have been acts or communications endeavoring to intimidate or influence a witness, which may be the predicate for indictments under G. L. c. 268, § 13B (such as charged against the defendant), is not dependent upon, or inextricably tied to, the precise number of telephone calls placed. A single telephone call may encapsulate multiple discrete and independent threats of different manner and means, and may contain varied offerings of things of value. To illustrate: a person seeking to influence a witness may, in one telephone call, threaten physical harm to the witness, threaten to kill a family member, or offer varying inducements such as money, a car, a trip, or drugs. Depending on the facts and circumstances, and whether there is an independent nature to them, each separate and distinct threat or inducement may be the predicate for an indictment for witness intimidation under G. L. c. 268, § 13B.[14] Stated another way, discrete and differing threats or inducements may be directed to a witness as contained within one form of communication (e.g., a telephone call), a writing (e.g., a letter), or an encounter (e.g., a personal confrontation). There is no requirement, as a matter of law, that such separate unlawful threats or inducements, each violative of G. L. c. 268, § 13B, must be lumped together, bundled and charged as just one indictment under that statute. Cf. *Commonwealth* v. *Maldonado,*

---

[14]See the elements of G. L. c. 268, § 13B, quoted in pertinent part in note 1, *supra.* Witness intimidation under the statute requires proof that (1) an individual was a witness in a stage of a criminal proceeding, and that the defendant (2) wilfully endeavored or tried to influence the witness, (3) did so by means of intimidation, force, or threats of force, or the offering of inducements, and (4) did so with the specific intent of influencing the witness. See *Commonwealth* v. *Conley,* 34 Mass. App. Ct. 50, 53 (1993). Proof of the offense requires that the defendant wilfully endeavored or tried to influence the witness. *Commonwealth* v. *Robinson,* 444 Mass. 102, 109 (2005). *Commonwealth* v. *Cathy C.,* 64 Mass. App. Ct. 471, 475 (2005).

429 Mass. 502, 509-510 (1999) (multiple convictions for cognate offenses permissible, so long as jury is charged that each conviction must be predicated on a discrete act); *Commonwealth* v. *Black*, 50 Mass. App. Ct. 477, 479 (2000) (evidence and instructions adequately identified separate conduct on which convictions were based).

Applying the *Latimore* standard, see *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979), from distillation of the trial evidence, we have calculated that there were five indictments for which there was sufficient evidence to survive the standard against entry of a required finding of not guilty,[15] and attendantly to allow for retrial consistent with double jeopardy principles. This calculation of the proof introduced on five of the indictments rests on both direct and circumstantial evidence.

First, there was direct evidence of multiple threats in that Reyes testified to five discrete threats and inducements made by the defendant, which may be parsed into five separate endeavors to influence the potential trial witness under G. L. c. 268, 13B. Specifically, Reyes testified that the caller "Ben," whom the witness identified as the defendant, (1) threatened his life, (2) threatened his baby's mother, (3) threatened his mother, (4) offered to give the witness $2,000 not to go to court and testify, and (5) offered 112 grams of cocaine. Second, there was direct corroborative evidence of several endeavors by the defendant to influence the witness — and, thus, several predicate acts in furtherance of witness intimidation under the statute — in the defendant's admission that he placed "some" telephone calls to the witness. Specifically, the reference to *some* calls corroborates and provides evidentiary context to support that multiple threats were delivered by the defendant, consistent with Reyes's description of five criminal acts of witness intimidation. Third, there was circumstantial evidence, from which

---

[15]Although the defendant's appellate brief, as a first position, asserts that there was insufficient evidence to prove the defendant guilty on any of the seventeen indictments, at a secondary level, the defendant's brief forthrightly acknowledges, as must be the case, that although the witness Reyes did not cite a specific number of telephone calls from the defendant, the witness did testify concerning specific and discrete threats and inducements. The defendant, accordingly, concedes that there may have been sufficient evidence of five threats and inducements designed to influence the witness.

reasonable inferences may be drawn, that the defendant leveled multiple threats and offered multiple inducements in the five different forms recounted by the witness, Reyes. This circumstantial evidence includes the telephone toll records, which listed a great number of incoming calls to the witness's (Reyes's) cell phone on March 15, 2004, and other telephone records that identified the originating telephone number as assigned to the apartment of the defendant's girl friend, at which he was arrested.

For the foregoing reasons, double jeopardy does not bar, and the defendant may be tried on, five indictments on remand of this case.

6. *Conclusion.*[16] The judgments are reversed and the verdicts set aside. Judgment shall enter for the defendant on twelve of the seventeen indictments. The matter is remanded for further proceedings not inconsistent with this opinion.

*So ordered.*

---

[16]The defendant argues that the convictions are not sustainable because the calls to the witness may have been placed on March 14, 2004 — not on March 15, 2004, the date stated in the seventeen indictments. In light of our disposition, we need not address this challenge except to note that this reduces to an argument that there was material variance between the indictments and the trial proof. However, the time or date of an offense is not an essential element of the crime and does not, in the absence of prejudice, warrant reversal of a conviction. See generally G. L. c. 277, § 35; *Commonwealth* v. *Day*, 387 Mass. 915, 922 (1983); *Commonwealth* v. *Clarke*, 48 Mass. App. Ct. 482, 488-489 (2000). See also *Commonwealth* v. *King*, 387 Mass. 464, 467 (1982); *Commonwealth* v. *Conefrey*, 420 Mass. 508, 511 n.6 (1995); *Commonwealth* v. *Bougas*, 59 Mass. App. Ct. 368, 370 (2003).