NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1032

COMMONWEALTH

vs.

BRYAN DIAZ.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a jury trial in the Superior Court, the defendant was convicted of armed assault with intent to murder, G. L. c. 265, § 18 (b) (2014); aggravated assault and battery by means of a dangerous weapon resulting in serious bodily injury, G. L. c. 265, § 15A (c) (i); assault and battery by discharging a firearm, G. L. c. 265, § 15E (2015); unlawful possession of a loaded firearm, G. L. c. 269, § 10 (n) (2015); and unlawful possession of a firearm, G. L. c. 269, § 10 (a) (2015).[1]  On appeal, the defendant argues that the judge abused her discretion by admitting prejudicial testimony from the

_____

[1] The defendant was also found guilty of unlawful possession of ammunition. That charge was dismissed at sentencing at the request of the Commonwealth "as merged."

Commonwealth's gang expert, Sergeant Stephen Roche of the Worcester police department.  We affirm the convictions.

Background.  The following facts are not disputed.  The defendant was indicted in connection with a 2018 drive-by shooting in Worcester.  Although the police had some evidence that the defendant was the shooter, the culprit's identity remained a live issue at the time of trial.

The Commonwealth's theory of the case included evidence of the defendant's motive to commit the crimes.  To that end, the prosecution moved in limine to introduce Roche's expert opinion evidence to show that the defendant and the victim, Michael Diaz, were members of rival gangs, and to support the Commonwealth's argument that the shooting was part of a spike in local gang-related violence.  The defendant opposed the Commonwealth's motion and cross-moved to exclude evidence of his gang membership, arguing that the proposed testimony was inadmissible propensity evidence.

The judge conducted a voir dire to assess the foundation of Roche's opinions.  On direct examination, Roche testified that he had been a Worcester police officer for thirty-four years and had worked in the gang unit for twenty-two years.  He also testified that the members of the gang unit identify local gang members using "a ten[-]point system," under which certain evidence of gang membership -- for example, a person's self-

2

identification as a gang member -- is valued in "points" and contributes to an overall score.  An individual who scores ten or more points is deemed to be an active gang member.

At the motion hearing, Roche testified to his familiarity with local gangs and gang rivalries in Worcester, and to the increase in gang-related violence in Worcester in the period leading up to the shooting.  In particular, he testified that the Kilby and MOB gangs were rivals, and that rival gangs engaged in frequent retaliation against one another.

Roche opined that the defendant belonged to the Kilby gang, and that the victim was a member of the MOB gang; this opinion relied on verification performed in 2014 by another member of the Worcester gang unit, Officer Thomas Duffy, using the ten-point system noted above.  Moreover, Roche's testimony confirmed his awareness that both the defendant and the victim had previously "self-identified" as members of those gangs to Duffy and, separately, to staff at the house of correction.  Specifically, Roche testified that a corrections officer, John Sables, told him that the defendant and the victim confirmed their memberships in the Kilby and MOB gangs, respectively, as part of each individual's intake at the house of correction in

3

2014.[2]  At the hearing, the defendant did not challenge the validity of the ten-point system Roche described in his testimony, nor -- with one exception as to hearsay that the defendant appears to have withdrawn -- did he object to the substance of any of Roche's testimony.

At the conclusion of the voir dire, the judge allowed the Commonwealth's motion to present Roche's expert testimony, subject to carefully-tailored limitations set forth in a detailed written order.  Notably, the judge ruled that Roche could testify to his opinion that the defendant and the victim belonged to rival gangs, but that the Commonwealth could not elicit from him any testimony about the methodology on which he relied in forming that opinion, unless the issue was raised by the defendant on cross-examination.  The judge explicitly stated that, at any party's request, she would give limiting instructions that the only permissible use of the expert testimony was to motive, and at trial, she did so.  Roche testified in accordance with the judge's order.[3]

---

[2] Roche was not asked about the context in which the defendant and the victim self-identified to Duffy.  He did, however, testify that correctional personnel collect information from detainees about their gang affiliations to ensure the jail does not house rival gang members together.

[3] At trial, the defendant did not discuss the methodology underpinning Roche's opinion.

4

Discussion.  The defendant argues that Roche's expert testimony was inadmissible on various grounds.  We address each in turn.

1.  Daubert-Lanigan challenge to expert testimony.  The defendant's challenge to the reliability of the "ten-point" system Roche used to form his opinion on the defendant's gang membership was not raised below.  With no record developed to support it, the argument fails.  See Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 589 (1993); Commonwealth v. Lanigan, 419 Mass. 15, 24 (1994); Commonwealth v. Coutu, 88 Mass. App. Ct. 686, 693-694 (2015).

We are not persuaded by the defendant's related arguments. First, we do not agree that Roche's opinion lacked an adequate foundation.  It is well settled that "an expert's opinion must be based on (1) facts within his or her direct personal knowledge, (2) evidence already in the record, or (3) facts or data not in evidence if the facts or data are independently admissible in evidence and are a permissible basis for an expert to consider in formulating an opinion" (emphasis added).  Matter of P.R., 488 Mass. 136, 142 (2021).  These are disjunctive requirements; as we discuss infra, Roche's opinion rested on independently admissible evidence tying the defendants to specific gangs, and it therefore had sufficient foundation.  See Matter of P.R., supra.

5

Second, there was no evidence to support the defendant's claim that the information provided by either the defendant or the victim to Sables and the jail staff was unreliable because it was a coerced "confession" or "admission."  It was not disputed that the defendant's and the victim's statements about their gang memberships were collected for an institutional safety purpose -- ensuring that rival gang members were not housed together.  There was thus no basis on which to conclude that the information regarding gang membership was solicited as an admission of wrongdoing.

Third, although Roche's opinion took into account the fact that the defendant had been "stopped or arrested" with various known gang members, this was only one consideration supporting his opinion.  Cf. Commonwealth v. Wardsworth, 482 Mass. 454, 469-470 (2019).  We discern nothing improper in Roche's inclusion of this observation in his analysis, and we are not persuaded that his opinion imputed to the defendant "[gang membership] by association."

Finally, we are not persuaded that the information the defendant and the victim provided in 2014 about their gang memberships was "stale" by the time of the shooting four years later.  This is particularly true in light of Roche's testimony about the long-term commitment inherent in gang affiliation and membership.  See Commonwealth v. Atchue, 393 Mass. 343, 349

6

(1984), citing Sgro v. United States, 287 U.S. 206, 211 (1932) (timeliness of facts supporting search warrant is "determined by the circumstances of each case").

2. The defendant's hearsay challenge. We are satisfied that Roche's expert opinion, although based on hearsay, was admissible. This is because the facts the defendant challenges on appeal would have been "independently admissible" through an appropriate witness. Commonwealth v. Avila, 454 Mass. 744, 761 (2009). We are likewise satisfied that where Roche knew the substance of the statements, they were evidence "to which he could apply his own expertise." Wardsworth, 482 Mass. at 467.

The defendant's statements about his gang affiliation were not hearsay when they were offered against him by the Commonwealth, see Mass. G. Evid. § 801(d)(2)(A) (2024), and they could have been admitted at trial by, for example, calling Duffy or Sables to testify to them. See Commonwealth v. Lester, 70 Mass. App. Ct. 55, 61-62 (2007). The fact of the victim's gang affiliation would likewise have been admissible through the victim himself.[4]

_____

[4] The defendant contends that if called to testify at trial, "the victim would have asserted his [Fif]th Amendment right and his testimony would have been unavailable." This is pure speculation, as there is nothing in the record to support that representation. Even if the victim were unavailable, however, his statements would likely have been admissible through either Duffy or Sables as an exception to the hearsay rule. See Mass.

7

None of the defendant's other challenges to the foundation of Roche's opinion are persuasive. Where the judge explicitly prohibited the prosecution from eliciting the basis of Roche's opinion on direct examination, and the Commonwealth complied with the judge's order at trial, the defendant's reliance on Commonwealth v. Nardi, 452 Mass. 379, 392 (2008), and Commonwealth v. Greineder, 464 Mass. 580, 583 (2013), is misplaced. Likewise, this case is readily distinguishable from Wardsworth, in which there was no evidence about the source of the information included in the database on which the proposed gang expert relied. See 482 Mass. at 467-468. Finally, where Roche was aware of the defendant's and the victim's statements

---

G. Evid. § 804 (2024). See also Lester, 70 Mass. App. Ct. at 62 (whether statement is admission for purposes of hearsay rule turns not on whether proponent of statement is trial adversary, but "depends on whether there is an adversity of interests between the introducing party and the party who made the statement").

To the extent that the defendant developed any record on whether the victim's statements were "testimonial hearsay," that record does not establish that the victim's statements to Duffy or Sables were the product of "interrogation," cf. Commonwealth v. Earl, 102 Mass. App. Ct. 664, 670-671 (2023), or that the purpose of the questioning was "to establish or prove past events potentially relevant to later criminal prosecution." Davis v. Washington, 547 U.S. 813, 822 (2006). We are likewise unpersuaded that the record established that the defendant's statements -- even those made at the house of correction -- required for their admissibility the administration of Miranda warnings. See Commonwealth v. Larkin, 429 Mass. 426, 434 (1999).

to Duffy and Sables confirming that they belonged to the Kilby and MOB gangs, respectively, we are not persuaded that his opinion rested entirely on Duffy's "scoring" of the two individuals with the ten-point system.  The judge could, and we infer did, conclude that Roche's opinion took into account his own assessment of these statements.  There was therefore no abuse of discretion in admitting the opinion evidence.  See Commonwealth v. Maldonado, 429 Mass. 502, 505 (1999) (noting judge's "exemplary" handling of evidence of gang membership).

Judgments affirmed.

By the Court (Vuono, Meade & Hand, JJ.[5]),

Clerk

Entered:  February 28, 2025.

---

[5] The panelists are listed in order of seniority.