NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-681

COMMONWEALTH

vs.

JOSIAH SWEENEY.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a jury trial in the Juvenile Court, the defendant was found to be a youthful offender on an indictment for carrying a firearm without a license in violation of G. L. c. 269, § 10 (a). On appeal, the defendant asserts, inter alia, that the judge erred in admitting a video recording, which was extracted from the defendant's cellular telephone, that depicted a youth, allegedly the defendant, pointing a gun at the phone's camera. Concluding on this record that a combination of errors related to the jury's consideration of this video recording resulted in prejudicial error, we vacate the defendant's conviction. Because we also conclude that the evidence was sufficient to sustain the defendant's conviction, we remand the

case to the Juvenile Court for a new trial should the Commonwealth choose to pursue one.

1. Background. As relevant to our analysis of the grounds on which we vacate the defendant's conviction, the jury could have found the following facts based on the evidence presented at trial. On March 4, 2022, at approximately 12:50 A.M., C.D. was driving southbound on Route 18 in New Bedford with his friend, H.P., when he saw a red, "box-like" car swerving in the lanes ahead. After slowing down to avoid colliding with the car, C.D. pulled alongside it, and was able to see inside sufficient to offer a description of the driver and front seat passenger. The red car pulled slightly ahead of C.D.'s car and he saw the person subsequently alleged to be the defendant seated in the rear passenger seat of the car. As the red car pulled farther ahead, C.D. saw a hand sticking out of the rear passenger's side window,"[a] gun and the muzzle flash," and then heard "[t]wo shots [ring]." "[O]ne bullet went through" the roof of C.D.'s car, "inches" from where he and H.P. were sitting.

After calling 911, C.D. met with a police officer, described the incident, and showed the police the hole in his car's roof. At around the same time, officers responded to a

ShotSpotter[1] alert, and traveled to an area of Route 18 around Potomska Street where they found a bullet fragment on the road.

Using the information from the ShotSpotter alert, C.D.'s call to 911, and C.D.'s description of the incident to the police, a detective accessed video footage from city-owned and privately-owned cameras in the area which led to the identification of the red SUV and the defendant.

On March 7, 2022, the police arrested the defendant and executed a search warrant, seizing "43 additional rounds of . . . ammunition" and the defendant's cellphone.  The cellphone was transferred to the state detective unit, where Cellebrite[2] software was used to extract the phone's contents.

The defendant was charged with one count of carrying a firearm without a license and two counts of attempted assault and battery by means of a firearm.  At trial, C.D. made an in-

---

[1] At trial, a detective testified that ShotSpotter is a "gunshot detection system which is designed to triangulate gunshots . . . to pinpoint a specific location and also a time in which the gunshot was detected."  Because we reverse on other grounds, we need not address the defendant's challenges to this evidence.

[2] At trial, the detective described Cellebrite as creating a "carbon copy view" of the phone's contents that "arranges the data collected from the dump into . . . a usable format where the viewer can see the content without physically manipulating the phone."  Because we reverse on other grounds, we need not address the defendant's challenges to this evidence.

court identification of the defendant as the shooter.[3]  The Commonwealth submitted a video recording, extracted from the defendant's cellphone, that depicted an individual, alleged to be the defendant, pointing what appeared to be a firearm toward the phone's camera from a very close distance.  A portion of the individual's face was obscured by the weapon held in front of the camera.  The defendant's counsel objected to the admission of the video recording.  At the close of evidence, the defendant's counsel moved for a required finding of not guilty arguing that there was insufficient evidence that the defendant possessed an operational firearm.  The judge denied the motion.  The jury found the defendant guilty of carrying a firearm without a license.[4]

2.  <u>Bad Act Evidence</u>.  a.  <u>Standard of review</u>.  "We review a judge's evidentiary rulings for an abuse of discretion."  <u>Commonwealth</u> v. <u>Welch</u>, 487 Mass. 425, 440 (2021), quoting <u>Commonwealth</u> v. <u>Andre</u>, 484 Mass. 403, 414 (2020).  The defendant asserts that the judge abused her discretion in admitting the cellphone video recording without first analyzing the recording's admissibility as evidence of a prior bad act.

_____

[3] The defendant's appeal includes a challenge to this identification.  Because we reverse on other grounds, we do not reach this issue.

[4] The defendant was acquitted of both counts of assault and battery.

4

Because the defendant's objection was preserved at trial, to the extent we discern an abuse of the judge's discretion, we review it for prejudicial error. See Commonwealth v. Reyes, 483 Mass. 65, 78 (2019).

b. Video recording. The defendant raises a number of arguments concerning the video recording depicting a youth who was alleged to be the defendant. We agree that certain errors, in combination, require that we vacate the finding that the defendant is a youthful offender and remand the matter to the trial court for a new trial should the Commonwealth choose to pursue one.

It is well-settled that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Mass. G. Evid. § 404 (b) (1) (2025). Such evidence may, however, "be admissible for another purpose," such as to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Mass. G. Evid. § 404 (b) (2). See Commonwealth v. Crayton, 470 Mass. 228, 249 (2014). Before admitting evidence of a firearm-related prior bad act, "the judge should articulate the precise manner in which the evidence of the defendant's access to and familiarity with firearms is

5

relevant and material to the facts of the particular case." Andre, 484 Mass. at 415.

Here, before trial, the Commonwealth moved in limine to admit the video recording, stating that it was being offered to show that the defendant "had the manner and opportunity to possess a firearm." In response, the judge asked the defendant's counsel whether "any potential prejudice" could be overcome "with a limiting instruction," to which counsel stated, "I think a limiting instruction would possibly alleviate that particular issue, Your Honor." Although the video recording allegedly depicted the defendant possessing a firearm prior to the crime, it was offered, permissibly, for the precise purpose of showing that the defendant had access to the firearm. The evidence was, therefore, relevant. See Mass. G. Evid. § 404 (b) (2); Commonwealth v. Crayton, supra.

Even where evidence is relevant to a permissible purpose, however, it "will not be admitted if its probative value is outweighed by the risk of unfair prejudice to the defendant." See Crayton, supra. In assessing the propriety of the judge's decision to admit evidence of prior bad acts, we may consider factors including:

> "(1) whether the trial judge carefully weighed the probative value and prejudicial effect of the evidence introduced at trial . . .; (2) whether the judge mitigated the prejudicial effect through proper limiting instructions . . .; (3) whether the challenged evidence was cumulative

6

of other admissible evidence, thereby reducing the risk of any additional prejudicial effect . . . ; and (4) whether the challenged evidence was so similar to the charged offense as to increase the risk of propensity reasoning by the jury."

Commonwealth v. Peno, 485 Mass. 378, 386 (2020).

The defendant contends that application of these factors shows that the risk of unfair prejudice posed by the video recording outweighed its probative value, and thus, the judge abused her discretion by admitting the video. As to the first factor, absent a more robust explanation on the record of the judge's reasoning, we cannot say that the judge considered either the risk that the jury would ignore a limiting instruction or carefully weighed the video recording's probative value against its prejudicial effect. See Commonwealth v. Samia, 492 Mass. 135, 148 n. 8 (2023).[5]

In addition, as to the second factor, we are not persuaded that the judge's instructions mitigated the risk of the video recording's prejudicial effect. See Peno, 485 Mass. at 386. The most relevant instructions, which were read to the jury after the admission of the video recording, and repeated almost verbatim at the close of evidence, stated the following:

"There was also a video of the defendant that was admitted into evidence . . . . You may consider this video as some evidence showing the defendant's familiarity with or access to firearms, but only if you first conclude that the video

---

[5] We express no opinion on whether the video recording should be admitted at any trial after remand.

actually depicts a firearm and that the defendant knowingly had possession, custody or control over that firearm. If you're not satisfied that the defendant had knowing possession, custody or control over a firearm in that video, then you should not consider that evidence in any way."

These instructions raise two concerns. First, in declaring that "there was . . . a video of the defendant that was admitted into evidence" (emphasis added), the judge improperly instructed the jury that the individual in the video recording was, in fact, the defendant. See Commonwealth v. Borges, 2 Mass. App. Ct. 869, 869 (1974) ("judge's comment amounted to an instruction as to the inference which the jury should draw . . . and had the effect of throwing the judge's opinion onto the scales decisively against the defendant"). Similarly, the digital folder containing the video recording was provided to the jury during deliberations labeled as "[defendant's first name] holding gun." [6] Second, contrary to the model instructions given in cases where prior bad act evidence is admitted, the judge's instructions related to the video recording did not explicitly instruct the jury that they could not consider the video "as proof that the defendant ha[d] a criminal personality or bad character." See Criminal Model Jury Instructions for Use in the

---

[6] At oral argument, the Commonwealth stated that the folder named "'[defendant's first name] holding gun' . . . was not supposed to be in there . . .," and that there is no affirmative evidence of whether the jury saw the folder name.

District Court 3.760 (2009). This omission was significant where the risk that the jury would engage in "propensity reasoning" -- that is, conclude that because the defendant possessed a firearm in the video, he also possessed a firearm at the time of the alleged shooting -- was high. See Peno, 485 Mass. at 386.

On this record, we conclude that admitting the video recording without giving the jury proper instructions and instructing the jury that the defendant was the person in the video was error. L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014) ("a judge's discretionary decision constitutes an abuse of discretion where we conclude the judge made 'a clear error of judgment in weighing' the factors relevant to the decision" [citation omitted]). Because we agree with the defendant's argument that there was a "reasonable possibility" that the admission of the video recording "might have contributed to the jury's verdict," we conclude that the error was prejudicial. Commonwealth v. Alphas, 430 Mass. 8, 23 (Greaney, J., concurring).

3. Sufficiency of the evidence. Whether the Commonwealth can, on remand, seek to reprosecute the defendant depends on whether the evidence at the trial was sufficient to convict him of the offense of illegal possession of a firearm. See Commonwealth v. Lester, 70 Mass. App. Ct. 55, 66 (2007), quoting

9

Commonwealth v. Cardenuto, 406 Mass. 450, 457 (1990) ("Constitutional principles dictate that, if the evidence introduced by the Commonwealth was insufficient to sustain the defendant's conviction, retrial is barred by the principles of double jeopardy" [quotation omitted]).  Despite the defendant's argument that the evidence failed to show that the weapon at issue was an operable firearm, we conclude that the evidence was sufficient on that point.

In determining the sufficiency of the evidence, "we consider the evidence introduced at trial in the light most favorable to the Commonwealth, and determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Commonwealth v. Oberle, 476 Mass. 539, 547 (2017).  See Commonwealth v. Davis, 487 Mass. 448, 462 (2021) ("Ordinarily, in determining the sufficiency of the evidence, we include evidence improperly admitted" [citation omitted]).

To convict the defendant as a youthful offender on the charge of carrying a firearm without a license, the Commonwealth must prove that the defendant possessed a "firearm" as defined by G. L. c. 140, § 121 (1998).[7]  Under G. L. c. 140, § 121, a

---

[7] We note that the defendant's counsel stipulated to the defendant's date of birth, which meant he was sixteen years old at the time of the incident in question and therefore he could

10

firearm is a weapon "from which a shot or bullet can be discharged and of which the length of the barrel . . . is less than [sixteen] inches."  "In cases such as this one -- [where there was] no firearm available as a trial exhibit, [and] no ballistics evidence -- the necessary element of operability may be proved by witness testimony and related circumstantial and corroborative evidence."  Commonwealth v. Drapaniotis, 89 Mass. App. Ct. 267, 271 (2016).  See Commonwealth v. Nieves, 43 Mass. App. Ct. 1, 2 (1997) (proving operability "requires only that the Commonwealth present some competent evidence from which the jury reasonably can draw inferences that the weapon will fire").

Here, we conclude that there was sufficient evidence to support the jury's findings.  C.D. testified that (1) he saw "[a] gun and the muzzle flash" from the window where he located the defendant, (2) he heard "[t]wo shots [ring]," and (3) there was a hole in the roof of his car "inches" from where he was seated.  C.D. also testified that he did not see a "large barrel" sticking out of the window, and that based on his prior experience shooting both handguns and rifles, the gun appeared to be a handgun.  From this evidence, the jury could have concluded beyond a reasonable doubt that the defendant possessed

_____

not have lawfully possessed a firearm.  See G. L. c. 140, § 131 (d).

11

a firearm as defined by G. L. c. 140, § 121.  See Oberle, supra.

Accordingly, we vacate the judgment, set aside the verdict, and remand for a new trial should the Commonwealth choose to pursue one.[8]

So ordered.

By the Court (Henry, Hand & Allen, JJ.[9]),

*Paul Little*

Clerk

Entered:  February 18, 2026.

---

[8] Because we vacate the judgment, we do not consider the defendant's other arguments.  We note that the Commonwealth conceded that a detective's identification of the defendant from a photograph should not have been admitted, that the jury instruction on eyewitness testimony should have been given but was not, and that a portion of the detective's testimony about the Cellebrite software strayed beyond permissible lay knowledge.

[9] The panelists are listed in order of seniority.